## JARED CANFIELD *versus* DAVID IVES.

Where a joint and several promissory note was executed and left in the hands of M, one of the promisers, to be delivered to the payee, when it should be demanded by him, in exchange for a note for the same amount, but of a previous date, and signed by M alone, and no demand was made therefor by the payee before the death of M, it was *held*, that the new note did not operate *de facto* as a payment of the old note, that the property in such new note had not vested in the payee, and that he could not recover the possession of it from the administrator of M, it being presumed, that the interest which had accrued upon the old note was to be paid upon making the exchange.

TROVER to recover possession of a joint and several promissory note, for the sum of $200, dated December 2, 1833, payable to the plaintiff or his order, on demand, with interest, and signed by Miles Bartholomew, late of Sheffield, deceased, and Frederick H. Bartholomew, his son, who lived in New York.

It appeared, that on the 18th of August, 1831, Miles executed a note of that date, for the sum of $200, payable to the plaintiff, on demand, with interest ; that at some time previous to the 2d of December, 1833, in consequence of the plaintiff's having asked for payment of this note, or security therefor, Frederick called on the plaintiff and offered to give his note jointly with his father in exchange for it ; that the plaintiff acceded to this proposal, and agreed to call on Miles at Great Barrington and make the exchange ; that in pursuance of this arrangement, the note now in controversy was executed by Miles, as principal, and his son, as surety, as the son stated in his deposition, though it was not so expressed in the note ; and that the new note was left with Miles to be delivered to the plaintiff when he should call for it.   It further appeared, that Miles had secured and indemnified Frederick by a conditional indorsement upon a note held by him against Frederick ; that the new note not having been demanded by the plaintiff, remained in the hands of Miles until his decease, when it passed into the hands of the defendant, who was the administrator of Miles ; and that after the appointment of the defendant as such administrator, the plaintiff demanded of him the new note, and offered the old note in exchange, but the defendant refused to comply with such demand.   This action was thereupon brought against the

Canfield
*v.*
Ives.

defendant personally, on the ground that his refusal to deliver the note was a conversion of the plaintiff's property.

It was admitted that Miles died insolvent, and that Frederick was able to pay the note in suit.

A nonsuit or default was to be entered, according to the opinion of the Court.

Sept. 22d

*Hall*, for the plaintiff, cited *Jones* v. *Farley*, 6 Greenleaf, 226; *Shepard* v. *Hall*, 1 Connect. R. 494; *Camp* v. *Tompkins*, 9 Connect. R. 545.

*Sumner*, for the defendant, to the point, that neither Miles nor Frederick could be deemed the agent of the plaintiff, they being parties to the note, cited *Leigh* v. *Horsum*, 4 Greenleaf, 28.

SHAW C. J. subsequently drew up the opinion of the Court. The single question in this case is, whether the property in the note, which is the subject of the action, had vested in the plaintiff at the time of the demand and refusal. The Court are all of opinion that it had not. The transaction was inchoate and incomplete, and until the exchange was made pursuant to the agreement, the old note was not discharged, nor did the plaintiff become entitled to the right of property in the new one. It was a proposition, an executory agreement, never in fact executed. It is impossible to consider Miles Bartholomew as the agent of the plaintiff; he was himself a promiser and a party, and the same act of delivery which would bind his son would bind him, and till such a delivery as would bind him, his son would not be bound. It was a joint obligation, and must take effect, to bind both at the same moment. He was undoubtedly the agent of his son, authorized to deliver the note for him, and had he so delivered it, pursuant to that authority, the son would have been bound.

Such was the view taken of the case in the first instance, and an opinion was about to be delivered. But the facts were rather imperfectly stated, and a slight doubt arose in the minds of some of the Court, which led to a delay and further inquiry. It was on this ground: it did not appear by the report, in the first instance, what was the date and amount of the old note, for which the new note was to be given in exchange. Now, if the new note was given for the precise amount due on

Canfield
*v.*
Ives.

the old one, that is, for the principal of the old one with the interest computed from the date of the old to that of the new, so that nothing remained to be done, and the new note was, by mutual agreement, left at a particular place for the plaintiff, so that nothing remained but for him to call and take it, — under the rule of law in Massachusetts, that a negotiable note is to be deemed *primâ facie* payment of a pre-existing simple contract debt, this new note thus deposited, might be considered as *de facto* payment and satisfaction of the old note, by which it was cancelled and extinguished, and all right of action upon it taken away, and if so, it would follow as a necessary consequence, that the plaintiff must be deemed to have a property in the new note.

But upon comparing the two notes, the fact appears, as at first supposed, but not stated, that the new note was given for the same principal as the old, and that, therefore, there was interest due on the old note, and it is to be presumed, that upon the exchange of the notes, the interest was to be paid. This renders it quite decisive, that independently of the question upon the fact of delivery, it could not have been understood by the parties, that the new note was to enure and operate *de facto*, as payment of the old one, or that the new note was left with Miles Bartholomew for any other purpose than to be exchanged for the old one, that is, to be delivered when the old one should be given up. The further consideration, that the interest was to be paid on the old note, on such exchange, renders it quite clear, that the transaction was not to be understood as closed, so as to vest the property in the new note in the plaintiff, until such exchange, which was never made.

*Plaintiff nonsuit.*